UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-247-GWU

RANDALL STURGILL,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI).  The appeal is currently before the court on cross-motions for summary judgment.  Pursuant to § 83.11 of the Joint Local Rules for Civil Practice, the plaintiff's request for oral argument is denied.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

1

3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and</u>

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

>First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-247  Randall Sturgill

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-247  Randall Sturgill

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

6

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The plaintiff, Randall Sturgill, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of intellectual functioning between mild mental retardation and borderline intellectual functioning, dysthymia, post-traumatic stress disorder, and sensorineural hearing loss.  (Tr. 374).  Nevertheless, based, in part, on the testimony of a Medical Expert (ME) and a Vocational Expert (VE), the ALJ determined that Mr. Sturgill retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 375-8).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 41, unskilled work experience, and functional illiteracy could perform any jobs if he were capable of lifting 100 pounds occasionally and 50 pounds frequently, and also had the following non-exertional restrictions.  (Tr. 542). He: (1) should avoid a loud noise environment, hazardous machinery, and dangerous heights; (2) would have a fair (defined as "satisfactory") ability to follow

work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, handle detailed but not complex job instructions, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability; and (3) would have a poor ("limited but not precluded") ability to function independently and understand, remember, and carry out complex job instructions.  (Tr. 542-3).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 544).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff filed his current application for SSI on December 27, 2002 (Tr. 111-14), alleging disability beginning November 16, 2001 due to poor hearing (Tr. 153).  He had previously been awarded benefits for drug addiction and alcoholism which were terminated as of January 1, 1997, due to the passage of Public Law 104-121.  (Tr. 62, 636-42).  Another application was denied in an ALJ decision of February 10, 1988; his allegations were psychological problems, stomach pain, and shaking spells, but it was determined that his only impairments were related to alcohol abuse.  (Tr. 64-7).  A subsequent SSI application was denied in an ALJ decision of November 15, 2001, wherein it was determined that Mr. Sturgill's only "severe" condition was hearing loss.  (Tr. 73-9).  The current application was denied

07-247  Randall Sturgill

by an ALJ in a decision dated March 11, 2005 (Tr. 20-7), but was remanded by the Appeals Council (Tr. 388-90), resulting in the present final decision.  The ALJ in the present case did not reopen any of the decisions prior to November 15, 2001.  (Tr. 371).

At an administrative hearing in February, 2007, Mr. Sturgill testified to having nervousness and panic attacks, which essentially made it impossible for him to get along with anybody.  (Tr. 496-7).  He could take care of his personal needs, but could perform almost no activities and had to be taken care of by his family.  (Tr. 496, 506).  He conceded a long history of alcohol abuse, but denied using alcohol or drugs for five years or more.  (Tr. 498-500).  He had obtained counseling in the past year.  (Tr. 501).  He testified that he had been in special education in school, but could barely write his name, and could not use a phone.  (Tr. 491-3).  His only job was as a flagman on road construction, but he could not hear well enough to perform the job, and had almost gotten hit by a car.  (Tr. 494-5).

The plaintiff's main argument on appeal is that he meets the requirements of the Commissioner's Listing of Impairment 12.05C, captioned "Mental Retardation," which provides that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .

9

      C.  A valid verbal, performance, or full scale IQ of 60 through 70 and
a physical or other mental impairment imposing an additional and
significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

There were four attempts at IQ testing in connection with Mr. Sturgill's present application, but he had also been tested as far back as 1995.

On February 21, 1995, Psychologist I. T. Baldwin obtained a verbal IQ score of 61, a performance IQ score of 56, and a full scale IQ of 56, but stated that the scores were not valid and that Mr. Sturgill was obviously malingering and probably functioned at the low average range on a daily basis.  (Tr. 696-8).

On September 13, 1996, Psychologist Michelle Amburgey reviewed Mr. Baldwin's report and administered IQ testing showing a verbal score of 67, a performance score of 68, and a full scale of 66.  (Tr. 716).  She noted that these scores were improved from the previous evaluation, and although they were still in the range of mild mental retardation, she felt that they were likely underestimates of his actual ability.  (Tr. 716-17).  She noted that Mr. Sturgill continued to display potential indications of malingering, and no symptoms were significant enough to interfere with his ability to work.  (Tr. 717).

On December 14, 1999, Amburgey again attempted IQ testing, but Mr. Sturgill became increasingly agitated and left the session early "to seek an injection" at the emergency room.  (Tr. 786-7).  The next day, one of his relatives called to report that he had tested positive for cocaine.  (Tr. 787).

Psychologist James Leisenring conducted an examination on November 1, 2000.  He attempted to administer the Peabody Picture IQ Test, but this produced an IQ score of below 10, and Mr. Leisenring concluded that the plaintiff was malingering, although he also listed impressions of a generalized anxiety disorder, a dysthymic disorder, social phobia, a history of alcohol abuse, and a personality disorder with dependent features.  (Tr. 826).  He estimated that the plaintiff had borderline intellectual functioning.  (Id.).

Testing in relation to the current application for benefits begins with another evaluation by Psychologist Amburgey on February 19, 2002.  (Tr. 181).  The plaintiff stated that he was currently in treatment, and did not abuse alcohol.  (Tr. 182).  This testing produced a verbal score of 60, a performance score of 56, and a full scale score of 54.  (Tr. 183).  Amburgey diagnosed mild mental retardation, in addition to post-traumatic stress disorder, a panic disorder with agoraphobia, and a history of substance abuse.  (Tr. 184).  However, she added that it appeared his problems had been exacerbated by his history of substance abuse.  (Id.).

Slightly over a year later, the same examiner evaluated Mr. Sturgill for the fourth time.  (Tr. 256).  Again, he denied current drug use.  (Tr. 257).  IQ testing showed a verbal score of 61, a performance score of 62, and a full scale score of 58.  (Tr. 258).  The Bender Gestalt Test, if considered valid, suggested problems "of an organic nature."  (Id.).  Regarding the validity of the scores, Amburgey commented that it would be useful to review records from a treating psychiatrist who

11

07-247  Randall Sturgill

could provide documentation of his level of functioning over a period of time, but she ultimately diagnosed mild mental retardation, implying that she considered the scores to be valid.  (Tr. 259).

Finally, following the Appeals Council remand, Mr. Sturgill was evaluated by Annette Freel, a licensed psychological associate under the supervision of Dr. Greg V. Lynch, a licensed clinical psychologist.  He presented as being within the mental retardation range, and his verbal IQ score was 58, his performance IQ score was 64, and his full scale IQ score was 57.  (Tr. 438-9).  Because Mr. Sturgill was cooperative and put forward "fair effort," the results were judged to be valid.  (Tr. 439).  The psychologist assessed that Mr. Sturgill would have a "seriously limited but not precluded" ability in almost all areas of functioning.  (Tr. 443-4).

At the direction of the Appeals Council, the ALJ obtained testimony from an ME, Psychologist Doug McKeown.  Dr. McKeown stated that the record overall indicated a significant history of alcohol and drug use over a long period of time, even if it was not significant currently.  (Tr. 520).  He stated that the earlier assessments tended to suggest borderline intellectual functioning, and ultimately stated that although he accepted there were current valid scores within the range meeting the requirements of LOI 12.05C, the plaintiff was not able to establish an onset of functioning prior to age 22.  (Tr. 520-1, 524-5, 527, 531-2).  Dr. McKeown stated that the plaintiff's condition could be evaluated under LOI 12.04, for affective disorders, and 12.06, for anxiety-related disorders, but he did not meet the "B"

12

criteria of these listings, and his clinical condition would likely be significantly improved by regular treatment. (Tr. 521-2). He assessed mental limitations which were consistent with those adopted by the ALJ and set out in the hypothetical question. (Tr. 481-2, 522-3).

Therefore, although the plaintiff maintains on appeal that he did have some valid low IQ scores, there was substantial evidence for the ALJ to conclude that he had failed to establish significantly subaverage general intellectual functioning with deficits in adaptive function prior to age 22, as required by the Listing. Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001). In addition to the comments regarding a decline in functioning due to alcohol and drug abuse, the ME testified that the low grades which the plaintiff had received through the seventh grade were not a sufficient basis to establish mental retardation, given that many years later, he presented himself in a fashion that suggested borderline intellectual functioning. (Tr. 527).[1] Counsel also suggests that it was erroneous for the ALJ to substitute his own mental restrictions for those given by the examiners, but as previously noted, the ME also testified as to the mental restrictions that he felt were applicable, and these were adopted virtually word for word in the hypothetical question. An ALJ may accept the opinion of a non-examining source over that of an examiner where

---

[1]The plaintiff protests on appeal that Dr. McKeown was not properly qualified as an expert, but the psychologist's resume is in the transcript (Tr. 420-4), and his counsel indicated at the hearing he had no questions regarding his curriculum vitae (Tr. 518).

07-247  Randall Sturgill

the non-examiner has access to all of the evidence and clearly explains the reasons for his differing opinion, as is the case here.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

Finally, the plaintiff maintains that the ALJ erroneously did not include certain limitations given in the March 11, 2005 administrative decision, which mentioned a moderate limitation in basic mental work activities and an inability to read.  However, the ALJ did specify that Mr. Sturgill was functionally illiterate in the current hypothetical question.  (Tr. 542).  Moreover, whatever may be said about a restriction of "moderate limitations in basic mental work activities" (Tr. 26), the fact that this decision was vacated by the Appeals Council (Tr. 388) means that it was not a final decision of the Commissioner and no res judicata or collateral estoppel attached.

The decision will be affirmed.

This the 12th day of November, 2008.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**